Case number 231056, Ronda Jones v. Steven Naert. Arguments not to exceed 15 minutes per side. Mr. Granzato, you may proceed for the appellant. Good morning. Mark Granzato on behalf of the plaintiff appellant. I have reserved five minutes. This is a 1983 unlawful arrest, unlawful prosecution claim arising out of Ms. Jones' arrest. She was arrested on two charges, the first being disorderly person, the second being resisting and obstructing an officer. The district court certainly got one thing right, and that is, in light of the Moreno case from the Michigan Supreme Court back in 2012, she had a right to resist if the arrest that preceded that resistance was in fact unlawful. So this case obviously rises and falls solely on the probable cause as it existed with respect to the disorderly person charge. I'll begin with this court's decision in Uza, which I've cited in several other cases. Probable cause in this context is generally an issue for the trial of fact, unless the court said there was only one interpretation of the evidence. And the fact is... What is the dispute on the state law violation? So I think you would at least concede he had probable cause that she was intoxicated? Yes, there's no question. And I'll concede the fact that she was in fact in public.  So it really just comes down to the danger element of the claim? I'm sorry? It comes down to the danger element of a claim? Of course. Would it be a danger to others? That's correct. Do you think it would have made a difference if he saw her kind of walking shakily? Yes, it would have made a difference. Do you think it would have been probable cause then? Well, I assume he would have, yes, because his whole concept at least is... So why don't you think it's enough? I'm sorry? If that's true, why isn't it enough that somebody is walking down a road that the officer knows is intoxicated? There's no sidewalks, we saw the video. There are cars passing by. She's intoxicated. She could be somewhat unpredictable. A tragic accident could have easily happened. You're assuming that somebody who's had seven glasses of wine over a five-hour period, whatever this was, is incapable of walking. That's incorrect. That's absolutely incorrect. The fact is that the only way he could charge her under the Michigan statute is if she created the danger to somebody else, someone else, which meant she had to navigate one half mile. That's all. That's all the distance we are talking about, part of which would have been in a subdivision that had a grassy area between the road and the houses, and part of which was on a two-lane highway, busier highway, I concede. But the fact is the highway itself had a shoulder, and the video shows her son walking on that shoulder. So if someone is able to just walk straight, it's impossible for them to pose a danger to anybody driving on that road. He had to. So probable cause, though, doesn't require her to have actually posed a danger, because then that would be enough to show she actually affirmatively violated the statute. So it's only kind of a risk assessment. I have been schooled by the former composition of the Michigan Supreme Court to be a textualist about statutes. But the way this statute reads is that a person is endangering directly, is endangering directly, the safety of another person or property. She wasn't. She wasn't at the time she was arrested. And more importantly, he had no indication that she could not navigate this one-half mile. In fact, it's his deposition testimony that basically sealed this case, to my knowledge, because he was asked directly, did you have any indication that she was incapable of walking, okay, that she could get this distance? And he said, this is his testimony, because you didn't observe anything. There was no observable evidence that she was unable to walk straight, correct? Yes, that's near testimony. Now, the fact is, he could say that he's arresting her because she's going to pose a danger to some cars driving on a highway, but there was no indication that she was incapable of walking this short distance. But so there's no indication, I mean, the necessary side effect of, I know it goes to the amount of intoxication, but just the mere fact of being intoxicated can be some indication that- But the mere fact of intoxication is applying a statute as it existed years ago. The Michigan statute on a disorderly person was amended. And originally, it did talk about simply public intoxication, but it was amended to add these additional requirements, one of which is endangering. Why isn't that enough to think that she might pose a danger to passing cars? So you would agree with the hypo that if she was stumbling, it's enough. Intoxication can cause stumbling, so. Yes, but seven wines- But you need additional proof. Seven wines does not necessarily correlate to someone who can't walk a straight line on a grassy medium or shoulder of a highway. Counselor, can I ask you, as you're well aware, our qualified immunity analysis has two prongs, and we also talk about how clearly established this is. And I think your brief is pretty straightforward that there's not a great case on point, which is usually what we're looking for on that clearly established prong. Can you explain to us how you think you satisfy that prong? Well, I think this is one of those situations that's very clear. It's one of these situations where I don't need a case right on point, or even one that's analogous. Because I think one of the things that's very important about this case is the tape, okay? Because what's involved with the recording is we have a situation where the Spitzley arrives at the scene. Spitzley is there with Nairt. They finally get Ms. Jones into the car. And suddenly, all of this is recorded either on a dash cam or a body recorder, suddenly and at exactly the same time, Nairt says to Spitzley, I went up there, and then it just stops. It just stops. And Nairt's recorder, I believe I timed it at two minutes and three seconds, Spitzley stops at exactly the same time for one minute and 45 seconds, okay? Which means two officers at exactly the same time did something to unrecord what they were going to talk about. Now, I'm trying to answer your question in a roundabout way, and I apologize. But the fact is that this court's decision in the LaPlante case says that where you have a gap in a recorder, and this is pretty important point in this particular altercation, this is right after the arrest has been made. There is no question, despite the nonsense testimony that Nairt gave in the criminal trial, that their conversation may not have even involved the case. That's not true, because the dash cam shows in point. Let me stop you for a second, because I think we're aware of that two-minute gap and the implications. But we tend to evaluate probable cause for an arrest before the arrest from the position of kind of a reasonable officer, what they would have observed and things like that. We're talking about a conversation afterwards. You know, if the officer had said, oh, jeez, maybe I shouldn't have done that, we're still going to evaluate the circumstances that gave rise to an arrest from a more objective viewpoint, even if somebody thinks they made a mistake later or if somebody thinks they were brilliant later. So looking from the perspective before the arrest, if you could go back to my question, why do you think it's clearly established? Well, it's the tape has to be construed in the light most favorable to the plaintiff. What if Nairt said, I didn't want her getting to her son? What if that's the reason these things were turned off? But subjective intent doesn't matter under the Fourth Amendment. We're still going to... It is entirely possible that the missing tape was, in fact... Remember, Nairt started out saying, I have a crystal ball, and the crystal ball tells me that Ms. Jones was driving this car. Nairt then goes to her home. Nairt really does sort of put the gas... Well, if we somehow, you know, mysteriously were able to uncover those two minutes and we hear Officer Nairt say, oh, man, I was just so scared she was going to get into the road. It was really dark. There were so many cars. I was just so scared. Would you have no case then? I probably would not have a case. So you think it all goes to the officer's subjective intent? You must construe that tape in the light most favorable to the plaintiff. The most favorable interpretation of that tape was Nairt saying, my crystal ball told me she was driving that car, and I wanted her nowhere near her son. Remember, there's another thing about this case, okay? He testified in his deposition in this case that, in fact, the Clinton County Sheriff's Department had a policy, and the policy was that they can drive a citizen anywhere they want, so he could have driven her. If he was worried, if he was actually worried about her safety and the safety of drivers out on that two-lane highway, he could have driven her, but he didn't want to drive her. He didn't want to drive her because he wanted no reunion between her and her son, precisely because he was working under the misapprehension that she had been the driver, and she was going to pin it on her son. I see I've exhausted my time. Good morning, Your Honors. I'm Kevin Campbell on behalf of the appellee, Nairt. I agree with my esteemed brother, counsel, that the issue, really, the central issue in this case is the probable cause determination by Deputy Nairt in reference to the false arrest claim. A reasonable officer in his shoes, with historical facts in his possession, would have reached the conclusion that there's a fair probability, and that's all that matters here, a fair probability, that Ms. Jones was a disorderly person. There's no dispute that not only she was intoxicated, but she demonstrated all the signs of an intoxicated person. She reeked of alcohol. So we know she's intoxicated, right, and your friend on the other side has conceded that and conceded she was drinking all this wine. Am I correct that it's not a violation of law to walk intoxicated in public in Michigan? I think your understanding is correct. I think you have to be a danger to, you have to endanger the public and their property. Right, so just walking intoxicated, even really intoxicated, is not against the law. And if you think somebody's really intoxicated and they're about to walk out of their house, off of their driveway, you can't arrest them just because you're going to go for a walk while you're really drunk. That's correct? I would agree with you. Okay, so you have to think that somebody's actually going to endanger someone else. Precisely. Okay, tell me where we have in this record, I just kind of want to zero in, the difference between, you know, okay, officer thinks she's really drunk, and what adds on to that to think she's going to endanger the public. Is that, it's like, it's dark outside, so we have a rule you can't walk drunk outside when it's dark, wearing dark clothes, I'm trying to figure out what the difference is. And I think that the important thing to focus on is the totality of the circumstances. And under the totality of the circumstances, what we have here is, Deputy Naird made a split second decision as he was pulling out of that driveway and saw Ms. Jones approaching Riverside Drive on her way to Wacosta. Somebody who was in dark clothing, dark brown clothing, it was dusk, and in fact at the time of her arrest, it was pitch black out. The other factor in the totality of the- So on that basis then, anyone who is drunk, who is walking by the side of the road in dusk, in dark clothes, can be arrested in your view? I think you require more facts. The facts that were before, as I mentioned at the onset, the facts that Mr. or Deputy Naird had, which is there's no sidewalks. The shoulder of the road here, on both roads, is very unforgiving. And in fact, in looking at the video- But you agree there's lots of grass on the side she could have walked on. I don't know if I would agree lots of grass. I would- We watched the video. She could have, I mean, there's grass there. What else was there if there wasn't grass there? There was, as I recall, there was a bit of gravel. And then- And then grass. Grass, and- So she could not have walked over the gravel to the grass? Well, yeah, she could have. She could have done an amazing job. She could have pulled herself- But what do we have that's telling us she wasn't going to do a good job, besides being drunk? The totality of the circumstances, and the fact that for probable cause, he- I think what's being confused here is that Deputy Naird need not establish with certainty, with inevitability, that she would go through the front windshield of a car. No, of course, but you've also told me that just being really drunk isn't enough. So I'm trying to figure out, like, what causes probable cause? I'm trying to figure out, you know, if I'm over at a neighbor's house a couple blocks away, have too many glasses of wine, which of course I would never do, but just say, hypothetically, and say, oh, it's not safe for me to drive home, I'm going to walk the two blocks. And it's cold outside and dark, so, you know, I have one of these very long, big, black Parkas from Patagonia. I walk out to go home, officer can arrest me. Are there sidewalks? No, I'm in a subdivision. Are there lights on the streets? Maybe not a ton, I'm just in a neighborhood, a typical subdivision. Rush hour traffic? I mean, maybe a few cars are driving by. I think here we have rush hour traffic. I think that might be a differential. So if I had to go on a busy street, you could arrest me? A busy street? With all due respect, I mean, I realize that there was gravel and some grass on the side of the roads, but they're very unforgiving, those shoulders. And in fact, if I just may digress for a moment, on May 20th, in a widely publicized story, 17 people were struck by a motor vehicle exactly at that location where this incident arose. This is not fun and games, this is serious business. 17 people were struck in one incident? By one car, one intoxicated motorist struck 16 to 17 people, two dogs. Walking on the shoulder? Walking on the shoulder. There were 17 people walking on the shoulder? It was a, I think, multi-generational family.  And this was at the precise location where this incident occurred. It's widely publicized. It was on May 20th, 2020. None of these people were drunk? The driver was drunk. But it speaks to the fact that this is not your typical urban or town or city situation where... Yeah, I get the fact that. Look, I live in a town down the street from a bar, and if I want to go have a few drinks, I have sidewalks, I can walk there and back safely and not endanger anybody. Ms. Jones is free to, if she likes drinking and walking around town, do the same thing. Live close to a bar with sidewalks. But to live on country roads, which, with all due respect, I do believe these are narrow roads and they're very poorly lit roads, and very unforgiving shoulders, in dark clothing, for purposes of the probable cause determination. And again, that's what we're dealing with. Is there a fair probability? He didn't have to determine in his calculus, he being Deputy Mayor, that it was inevitable that she was going to... But he needed to know she was more than just really drunk. We agree with that. Correct, that she posed a danger. Okay, so we now need to know that... I'm just trying to get the factors. She has to pose a danger to other people, not to herself. Correct. Which is an interesting thought. It is. To think of a police officer wanting to protect somebody who is really drunk from being hit by other cars. But this is... The arrest is available only if he is doing it because she is endangering other people. Yes, and I would say here that, really, by endangering herself, by being intoxicated and walking on the shoulder of a narrow road, she's endangering herself and others. I think they kind of go hand in hand. She would... I was curious about that, though. Is there any authority for an officer to... If the officer is concerned about the safety of the intoxicated individual, what is the officer to do? Does the officer have to think about whether the intoxicated individual will be a danger to others, or is there anything in Michigan law that would allow the officer to... I don't know if it's arrest, or just make sure that the individual is safe. To the point that was raised earlier, I think you do have the right to be drunk and walk in public, but you can't do so in a way that endangers other people and their property. But weren't there lots of other ways that the officer could protect other people, given that this was a half-mile walk? She announced definitively that she was walking to the scene of this accident where her car was totaled by her son. That's her line consistently. The officer could have driven slowly beside her as she's walking to that place, as opposed to arresting her. There's a lot of possibilities. I agree that that's one of them. I think she could have asked for a lift. I think she could have said, look, I'm a mess right now, I'm worried about my son. Yeah, and she was really aggravated at Naret for accusing her of being the driver when she said it was her son, who was a teenager, who had been driving it. And she said she had been on the phone all afternoon. So she doesn't trust Naret. When you watch the tape, it's very clear that she thinks Naret is after her. I think with the benefit of hindsight, that seems like a plausible possibility. However, I don't know, I mean, if he was going to, if Deputy Naret were to travel alongside her at a snail's pace on narrow roads, would that create a danger or risk to other drivers? It's hard to go back and, again, we're kind of nitpicking at the, at the calculations, the calculus of the officer regarding safety and the risk to the public. And I think that that could be a possibility. But it's, I think, equally possible that the officer was, or deputy, could have reasonably concluded that by hogging up, moving at a snail's pace on narrow roads, that could have presented a safety risk as well. Is there any concern about the safety risk of telling people they can't walk drunk in public if they don't have a reflective vest, or otherwise you could be picked up by the police? I think that is just the totality of the circumstances. You can't at night, which is generally when most people might be drinking, coming home from a bar or something like that, if you're not super visible, so you're not, you know, in neon or something. Like, I mean, I would have thought that the police, like, want people to walk and not be in a car and kill 17 people, to your point before, right? But this, it strikes me that there's a very fine line between what you're saying, you know, you're telling me, yes, you can walk drunk in public, and then also, well, maybe not if, you know, the cop doesn't think there's quite enough grass. I mean, who's going to feel comfortable walking home from the bar? Well, I think that if the facts in the shoes of the officer, the totality of the facts, support a reasonable inference that that person in an intoxicated state would impose a danger on motorists, then there's probable cause. And I think that in the calculus of the officer, it's, are there, is it, what kind of lighting is there? Is there, are there narrow roads? Are there broader roads? Are there sidewalks? Was there, forgive me if I'm not remembering, was there evidence of any kind as to whether she was staggering or stumbling? In the very limited window that we have, which I approximate to be about one minute in duration, that is from the time that she is observed leaving the house to the time of her being grabbed by the officer, there's no evidence that she was staggering or stumbling. But I think... The merit doesn't say she was in a deposition or anything like that, that she was staggering or stumbling. And she presumably, tell me if I'm wrong, she denies, I assume, that she was staggering or stumbling. I think it's a fair assumption that she denied that she was staggering or stumbling. But, again, I think that that would, to require that for probable cause determination, would require, again, that the officer be able to establish with a degree of certainty that harm was inevitable. I don't think probable cause requires that. It gives the officer... What do Michigan cases say about this? In the end, we're interpreting a state statute. I couldn't find many cases applying the statute, frankly. The one case I found was much more egregious circumstances. It was somebody walking in the roadway itself and then refusing to leave the roadway and being intoxicated. Is there any other case law that's analogous to this? We have, in this circuit, two decisions by this court in applying the disorderly person statute in the context of a false arrest context. I've cited those. Schlewi v. Toro is one. And in Schlewi, I may be mispronouncing the one surname, but in Schlewi v. Toro, the plaintiff was in the police station, covered with blood, intoxicated, and was throwing his arms about in a way that apparently flung blood on people around who were seated next to him. And in Schlewi, that plaintiff sued for false arrest for disorderly person. This court found that there was probable cause to conclude that there was a fair probability. I kind of meant more in the specific context of our case. I think it is. But that's more about the plaintiff was acting violently. Well, no, that was an endangerment case where the blood was determined to— the court found that the flinging of the blood endangered those around him. Well, we didn't know what was in the blood. No one knew what was in the blood. There was no blood sampling. So I only say that to point out that this court has never required that a officer in a probable cause context establish with certainty that the blood that's being flung around is going to hurt that guy or that person. No one knew what was in the blood. I think I also cited the Bauman v. Millisore case, and in that case— The theory of endangerment in that case was that the blood was going to infect someone, and that's what made it disorderly, or it was just like people were getting covered in blood. Their clothes might get blood on them or things like that. I would imagine even without some sort of transmittal of infection, you could violate the statute. I'm sorry. I think that there's no evidence in the Toro case that there was something in the blood. Right, but I'm saying would the statute require there to be something in the blood for it to violate— Under plaintiff's view, yeah. No, no, no. I'm asking about the statute. Yeah, the statute requires that you endanger those around you. Oh, and just getting people around you covered with blood wouldn't violate the statute. Well, this court found that there's a probable cause that it did violate the statute. Right, regardless of whether disease was going to get transmitted.  Okay, so that's not like here. I mean, it's not like this woman is vomiting and it's hitting other people. So what do you have that's like here? Well, I don't think we have a place— I mean, that really goes to the whole fact that to the extent there's a constitutional violation, it's not clearly established. There is no case directly on point, and for that reason, I've relied on cases that, in my humble opinion, are perhaps analogous. I've also cited the Baumann case v. Millisore, and in that case, the case involved a father who was heavily intoxicated at Detroit Metro Airport. He was with his eldest—with three daughters. The eldest daughter had a learner's permit. He wanted—he designated his eldest daughter, who had that learner's permit, to drive. The officers—this Court affirmed the probable cause determination under the disorderly person statute. I mean, that case involved the disorderly—Michigan disorderly person statute. In that—in Baumann, this Court did not require that the officers determine with some degree of certainty or inevitability that she was going to crash the car. It didn't observe her drive to say, you know what, she can't do it. They just determined under the facts of the case that, you know, she's got a learner's permit, she's nervous, and her father's intoxicated. And again, I think all of this goes to the fact that an officer's entitled to a certain amount of leeway in a probable cause context. Thank you. Your time is over. Oh, I'm sorry. Thank you, Your Honors. Thank you. Thank you. Judge Moore, in response to your question, Deputy Nairt was exactly, in his deposition, precisely the question you asked. He was asked, because the key thing in terms of the only indication he could have, and Ms. Jones was not walking inside the house, obviously, when they had their somewhat testy interview, but he did have an opportunity to see her as she's putting on her coat, walking down her driveway, and coming towards his car. And he was asked, did she stumble? No. Did she fall down? No. Did she appear to be walking straight? I assume that's a safe assumption. Was she unsteady on her feet? Not that I specifically recall at that time when she was walking down the driveway. This is what he testified to in his deposition. And again, he testified later on that he had no indication that she couldn't make this half-mile journey. So I want to stress to you, if this case goes to trial, the plaintiff's theory in this case is going to be that Nairt did not tackle Ms. Jones because he thought she was drunk and incapable of walking a half-mile on shoulders of two highways. He tackled her because he didn't want her to go there. He could have driven her. Another thing he didn't do, despite the fact that the defendant lauds his ability in their brief with respect to this, he didn't perform a field sobriety test. That would have given some indication of whether Ms. Jones could in fact have navigated this short distance, but he didn't do it. Nor did he give her a breath test. He didn't do it. And what plaintiff is going to present in this trial is he didn't do it because he didn't want her to get there. He didn't want her to talk to the son because he was totally convinced that his crystal ball was correct. And his crystal ball told him, right at the beginning of his involvement in this particular statute, his crystal ball told him that she was the driver. And that's why this escalated. I agree with the instinct that the concern here should have been more for her than for drivers in some respects. Do you think the officers have a duty to protect those who are intoxicated? You should ask this because there is a concept in Michigan law that doesn't come into play obviously here. Don't look at it because it's too ugly, but it's called the public duty doctrine. And it would basically exonerate a police officer who did not do it. There's been a recent case in the Michigan Court of Appeals that the Michigan Supreme Court decided not to hear on the question of an officer who stopped an obviously drunk driver and told him to go on. The reason I was asking is what if he had let her go and tragedy struck and she had got hit by a car because she had halfway there stumbled into the street. Would she have had a claim against him for not stopping her? It wouldn't work in Michigan law under the public duty doctrine. That I can tell you. You're saying under the public duty doctrine in Michigan there is no duty of a police officer to protect an intoxicated person from walking into a street and being killed. No harm to the other person driving the car. Just like when you hit a deer sometimes the car is not hurt. But obviously not something that comes into play in this case. But that is the law with respect to policemen. I think police officers should be taught to protect others. That strikes me as somewhat problematic. There's the question of course whether the protection involves arresting the person. Or does the protection involve controlling the person or helping the person. Obviously the plaintiff's position in this case is not that he was trying to protect her. The plaintiff's position in this case is he was of the view that she was going to meet up with her son and she was going to try to pin the blame on him. Isn't that a subjective motive of the police officer as opposed to what a reasonable officer would do? Wouldn't that reflect somewhat badly on the idea that he had probable cause to arrest her for being a public figure? It might play well to jury, but we have to look at the objective circumstances before the arrest. The objective circumstances of whether she could have navigated this one half mile consist of her walking down the driveway, putting her coat on. Also go back and listen again to the tape of the actual encounter inside her house. She is relatively lucid. She is that. She asks him for his name and badge number. There's a pause. I assume she's writing it down. Thank you both for your argument. The case will be submitted.